UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BURBERRY LIMITED, a United Kingdom Corporation, and BURBERRY LIMITED, a New York Corporation, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 20-cv-6909 |
| v. | ) ) | Judge Marvin E. Aspen |
| MARVEL YARBROUGH a/k/a BURBERRY JESUS, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Having obtained a default judgment against Defendant Marvel Yarbrough a/k/a Burberry Jesus ("Yarbrough"), Plaintiffs Burberry Limited (UK) and Burberry Limited (US) (collectively, "Burberry") now move for an award of $139,169.20 in attorneys' fees and $872.85 in costs. (Plaintiffs' Motion for an Award of Attorneys' Fees and Costs Pursuant to Court's Default Judgment Order ("Mot.") (Dkt. No. 39).) For the following reasons, we grant Burberry's motion in part. Burberry is awarded $137,356.52 in attorneys' fees and $645.00 in costs, subject to Burberry's decision on whether to address the fees and costs that we have declined to award.

## BACKGROUND

On November 20, 2020, Burberry sued Yarbrough, bringing claims for trademark infringement, false designation of origin, and trademark dilution under the Lanham Act; trademark infringement and trademark dilution under Illinois common law and statutory law; willful cybersquatting under the Anticybersquatting Consumer Protection Act; copyright infringement; and a judgment declaring Yarbrough's name change to "Burberry Jesus" invalid.

(Complaint ("Compl.") (Dkt. No. 1) ¶¶ 91–170; Default Judgment and Order Granting Permanent Injunction, Declaratory Judgment and Attorneys' Fees ("Default J. Order") (Dkt. No. 36) at 1–2.) After multiple unsuccessful attempts to serve Yarbrough at his home, Burberry filed an *ex parte* motion for alternative service, which we granted. (Dkt. Nos. 13, 14.) Burberry served Yarbrough via email and Federal Express, and when Yarbrough did not timely file an answer by January 8, 2021, Burberry sought an entry of default. (Dkt. Nos. 17, 18.) On January 20, 2021, we entered default against Yarbrough and permitted Burberry to file a motion for default judgment with prove-up damages. (Dkt. No. 19.)

Shortly after entering default, however, we received a letter from Yarbrough regarding the case. (Dkt. No. 20.) In light of this letter, we vacated the default and ordered Yarbrough to respond to Burberry's Complaint by February 12, 2021. (Dkt. No. 21.) He did not do so, and we entered default against him again. (Dkt. Nos. 22, 25.) Burberry subsequently filed a motion for default judgment, which we granted; however, we stayed execution of the order for 60 days to give Yarbrough another chance to respond to the Complaint. (Dkt. Nos. 27, 28, 34.) After Yarbrough failed to respond, we entered default judgment against him. (*See* Dkt. Nos. 35–37.)

Burberry thereafter moved for an award of attorneys' fees and costs. (*See* Mot.; Memorandum in Support of Plaintiffs' Attorneys' Fees and Costs Incurred by Winston & Strawn LLP Pursuant to Court's Default Judgment Order ("Mem.") (Dkt. No. 40); Bill of Costs (Dkt. No. 43).) We gave Yarbrough an opportunity to respond (*see* Dkt. No. 44), but he did not do so.

## ANALYSIS

We have already concluded that this case "warrants the award of reasonable attorneys' fees and costs" to Burberry. (Default J. Order at 5, 7.) We must now determine "the appropriate *amount* of attorneys' fees and costs"—a determination that affords us "wide discretion." *Spegon v. Cath. Bishop of Chi.*, 175 F.3d 544, 550 (7th Cir. 1999) (emphasis added).

I.    **Burberry's Request for Attorneys' Fees**

We start with Burberry's request for attorneys' fees.  The law firm of Winston & Strawn,

LLP ("Winston") represented Burberry in this litigation.  (Declaration of Natalie L. Arbaugh

("Arbaugh Decl.") (Dkt. No. 46) ¶ 1.)  Burberry seeks an award of $139,169.20 for work

performed by three attorneys and two non-attorneys at Winston from October 2020 through June

2021.  (*Id.* ¶¶ 2, 3, 13.)  Burberry's request, broken up by individual, is as follows:

| Attorneys | | | | | | |
|---|---|---|---|---|---|---|
| **Name** | **Position** | **2020 Hourly Rate** | **2020 Hours** | **2021 Hourly Rate** | **2021 Hours** | **Total** |
| Marjon Momand | Associate | $522 | 122.4 | $519 | 61.0 | $95,551.80 |
| Natalie Arbaugh | Partner | $785 | 18.6 | $875 | 29.8 | $40,676.00 |
| Michael Mayer | Partner | $819 | 0.5 | $889 | 2.1 | $2,276.40 |
| **Non-Attorneys** | | | | | | |
| Martha Calvo | Paralegal | -- | -- | $310 | 1.1 | $341.00 |
| David Pennel | Trial support manager | $162 | 2.0 | -- | -- | $324.00 |
| | | | | | **Total for All Individuals** | $139,169.20 |

(*Id.* ¶¶ 7, 13; Fee Invoices[1] at 9, 11, 42, 43.)

To determine what constitutes a "reasonable" attorneys' fee award, we "start[] by

determining the 'lodestar,' which is the attorney's reasonable hourly rate multiplied by the hours

the attorney reasonably expended on the litigation."  *Nichols v. Ill. Dep't of Transp.*, 4 F.4th 437,

441 (7th Cir. 2021).  This calculation also accounts for work reasonably expended by paralegals.

*See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285, 109 S. Ct. 2463, 2470 (1989); *Spegon*, 175

---

[1] After Burberry filed its fee invoices with redactions (*see* Dkt. No. 40-3), we directed Burberry to submit its fee invoices without redactions for our review.  (Dkt. No. 45.)  We refer to the unredacted version of Burberry's fee invoices throughout this Opinion, taking care not to unnecessarily disclose any information that could be appropriately deemed privileged or otherwise protected from disclosure.

F.3d at 553. Once we have determined the lodestar, we may then increase or decrease this figure "based on factors not included in the computation." *Sommerfield v. City of Chicago*, 863 F.3d 645, 650 (7th Cir. 2017); *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014). "If a plaintiff requests fees for the fee award litigation, [we] also determine that after calculating the lodestar." *Nichols*, 4 F.4th at 441.

### A. Lodestar Calculation

Burberry "bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed." *Spegon*, 175 F.3d at 550. Thus, although Yarbrough does not challenge Burberry's requested hours or rates, we independently examine them to determine whether Burberry has met its burden. *See Spellan v. Bd. of Educ. for Dist. 111*, 59 F.3d 642, 646 (7th Cir. 1995) ("We have no doubt that the district court has an independent obligation to scrutinize the legitimacy of [a fee petition].").

### 1. Hourly Rates

We first consider whether Burberry's requested hourly rates are reasonable. "A reasonable hourly rate is based on the local market rate for the attorney's services." *Montanez*, 755 F.3d at 553. "We presume that an attorney's actual billing rate for similar litigation is appropriate to use as the market rate." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011). The party moving for fees bears the burden of establishing the market rate, *Montanez*, 755 F.3d at 553, but once it provides evidence of its attorney's billing rate, the burden shifts to the non-movant "to present evidence establishing a good reason why a lower rate is essential," *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1313 (7th Cir. 1996) (quotation marks omitted). A non-movant's failure to challenge a party's evidence regarding its attorney's billing rate essentially concedes "that the attorney's billing rate is reasonable and should be awarded." *Id.*; *Pickett*, 664 F.3d at 637, 647 ("Had defendant

4

submitted no evidence, the district court would have had to award fees at [the plaintiff's attorney's] proposed rate.").

Burberry requests an attorneys' fee award based upon the following rates:[2]

- Ms. Momand – $522 per hour for 2020 and $519 per hour for 2021;

- Ms. Arbaugh – $785 per hour for 2020 and $875 per hour for 2021;

- Mr. Mayer – $819 per hour for 2020 and $889 per hour for 2021;

- Ms. Calvo – $310 per hour; and

- Mr. Pennel – $162 per hour.

(Arbaugh Decl. ¶¶ 9, 10, 12, 13.)  Burberry has provided invoices that show that Winston billed Burberry for these individuals' work at these rates.  (*Id.* ¶ 3; Fee Invoices at 2–5, 11–14, 21–24, 28, 30–32, 37–40, 43, 45–47, 49–52.)  Ms. Arbaugh also states that these rates are what Winston "customarily charges."  (Arbaugh Decl. ¶ 3.)  This evidence is sufficient to establish the rates at which Winston billed Burberry for its legal services in this case, which presumptively constitute the market rates.  *See City of Chicago v. Garland*, No. 18 C 6859, 2021 WL 1676387, at *6 (N.D. Ill. Apr. 28, 2021) (explaining that the plaintiff's "attorneys established their market rates based on the actual billable rates charged to and paid by firm clients"); *Worldpay US, Inc. v. Haydon*, No. 17 C 4179, 2020 WL 3050344, at *17 (N.D. Ill. June 8, 2020) (using the plaintiff's counsel's billing rates to calculate an attorney fee award where counsel had "provided evidence of their actual billing rates and the defendants" had not provided any information regarding rates for attorneys trying trade secret cases in the Chicago area); *Platinum Supplemental Ins., Inc. v. Guarantee Tr. Life Ins. Co.*, No. 17-cv-8872, 2020 WL 2098059, at *3 (N.D. Ill. May 1, 2020)

---

[2] Burberry and Ms. Arbaugh refer to the attorneys' billing rates as "discounted."  (Mem. at 6; Arbaugh Decl. ¶¶ 9, 10, 12.)  This characterization does not affect our analysis because Burberry does not seek to recover higher rates.

(finding that the plaintiff's detailed time sheets "cleared the threshold issue of specifying who did what and at what cost" and noting that the plaintiff "also submitted affidavits that all of the attorneys' rates are what they customarily charge"), *aff'd*, 989 F.3d 556 (7th Cir. 2021). This presumption is unrebutted because Yarbrough failed to respond to Burberry's motion. We therefore find Burberry's requested hourly rates to be reasonable, and we will calculate the lodestar based on these rates.

### 2.    Hours Billed

Next, we consider the reasonableness of the number of hours billed by Winston. Because Yarbrough only needs to pay for hours *reasonably* expended by Winston's personnel on this case, we must exclude "hours that are excessive, redundant, or otherwise unnecessary." *Johnson v. GDF, Inc.*, 668 F.3d 927, 931 (7th Cir. 2012) (quotation marks omitted). Excluding time billed in connection with preparing Burberry's motion for fees and costs, which we discuss later, three attorneys and two non-attorneys from Winston billed a total of 225.2 hours on this case: Ms. Momand, an associate, billed 173.0 hours; Ms. Arbaugh, a partner, billed 46.5 hours; Mr. Mayer, a partner, billed 2.6 hours; Ms. Calvo, a paralegal, billed 1.1 hours; and Mr. Pennel, a trial support manager,[3] billed 2.0 hours. (Arbaugh Decl. ¶¶ 7, 13; Fee Invoices at 48, 49, 53.)

We have reviewed each of these individuals' time entries. Keeping in mind that "the line between ample preparation and excessive preparation is, at the margin, a fine one," *Charles v. Daley*, 846 F.2d 1057, 1076 (7th Cir. 1988), and that some lawyers "are fast studies and others require extra preparation," *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993), the

---

[3] Burberry does not explain what Mr. Pennel does as a trial support manager, but we assume his duties are similar to those of a paralegal or other non-attorney legal professional for whom a party can recover attorneys' fees. *See Branch Banking & Tr. Co. v. Angino L. Firm, P.C.*, No. 1:16-CV-712, 2018 WL 4404627, at *6, *8–9 (M.D. Pa. Sept. 17, 2018) (awarding fees for work performed by a litigation support manager), *aff'd*, 809 F. App'x 102 (3d Cir. 2020).

amount of time Winston's attorneys and non-attorneys spent on the various tasks they performed does not strike us as excessive or unreasonable. This is especially so given Yarbrough's failure to provide us with an objective standard against which to compare the amount of time spent by Winston's personnel on any particular task. *See Brzowski v. Sigler*, No. 17 C 9339, 2021 WL 4283206, at *7 (N.D. Ill. Sept. 21, 2021) (refusing to "engage in an arbitrary determination of how long a reasonable attorney would spend on a given matter" when the defendant failed to offer any objective standard regarding the amount of time to spend on a given activity (quotation marks omitted)). Nor are we convinced based on our review that any of the time entries are unnecessarily duplicative or redundant. *See Schlacher v. L. Offs. of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 858 (7th Cir. 2009) (encouraging district courts "to scrutinize fee petitions for duplicative billing when multiple lawyers seek fees" because "overstaffing cases inefficiently is common"). Indeed, Winston's attorney staffing of the case—with one associate (Ms. Momand) doing the bulk of the work, one partner (Ms. Arbaugh) overseeing that work and corresponding with the client, and another partner (Mr. Mayer) pitching in a few times—was reasonable.

Nonetheless, some billed hours are not compensable as attorneys' fees because they involved tasks of an administrative or clerical nature. We must disallow any "hours expended by counsel on tasks that are easily delegable to non-professional assistance." *Spegon*, 175 F.3d at 553 (quotation marks omitted). In other words, Yarbrough need not pay for hours billed by attorneys or paralegals performing administrative tasks. *See, e.g.*, *Brzowski*, 2021 WL 4283206, at *7; *Johansen v. Wexford Health Sources*, No. 15-cv-2376, 2021 WL 1103349, at *7 (N.D. Ill. Mar. 23, 2021); *Nichols v. Ill. Dep't of Transp.*, No. 12-cv-1789, 2019 WL 157915, at *6–7 (N.D. Ill. Jan. 10, 2019), *aff'd*, 4 F.4th 437 (7th Cir. 2021). "In determining whether an entry

7

includes a clerical or secretarial task, the Court must consider whether the task was sufficiently complex enough to justify the use of non-clerical staff." *Brzowski*, 2021 WL 4283206, at *7 (citing *People Who Care*, 90 F.3d at 1315). Here, Ms. Momand, Ms. Arbaugh, and Ms. Calvo each billed time for tasks of an administrative or clerical nature.

**Ms. Momand.** Ms. Momand billed time for preparing or editing a civil cover sheet, a summons, appearance forms, and a notice of presentment.[4] (Fee Invoices at 8, 10, 36, 41 (entries for 11/18/2020, 11/23/2020, 2/24/2021, 2/25/2021, 3/8/2021, and 3/9/2021).) These tasks are delegable to non-legal professionals and should not be included in an award of attorneys' fees. *See, e.g.*, *Brzowski*, 2021 WL 4283206, at *5, *7–8 (disallowing, as time entries involving secretarial tasks, attorneys' time entries for completing civil cover sheet and providing summons information for filing; preparing, reviewing, and approving appearances; reviewing waivers of service of summons and preparing for issuance; and preparing notice of motion). Ms. Momand also billed time for "flagging" deadlines. (Fee Invoices at 10, 15, 20, 27, 33, 34 (entries for 11/23/2020, 11/30/2020, 12/4/2020, 12/29/2020, 1/21/2021, 2/3/2021, and 2/17/2021).) Flagging deadlines is akin to docketing case events or internal calendaring, which are tasks that can be performed by a non-legal professional as well. *See Johansen*, 2021 WL 1103349, at *7; *Nichols*, 2019 WL 157915, at *7.

All the time Ms. Momand billed on March 8 and March 9, 2021 is for administrative tasks, so we disallow those entries in their entirety. For the other time entries—November 18,

---

[4] In certain instances where Ms. Momand billed time for these or similar administrative tasks, Winston reduced the number of hours billed. (Fee Invoices at 8 (11/17/2020 entry: not charging 0.8 hours out of 1.6 billed hours for tasks that included "[p]repare civil cover sheet" and "prepare summons"); *id.* at 9 (11/20/2020 entry: not charging 1.0 hours out of 8.9 billed hours for tasks that included "prepare index of exhibits").) For these entries, we have assumed that the reduction reflects the amount of time spent on non-compensable tasks.

23, and 30, 2020; December 4 and 29, 2020; January 21, 2021; and February 3, 17, 24, and 25, 2021—Ms. Momand billed time for both administrative tasks and compensable tasks. We reduce the time billed for these time entries by 10 percent to approximate the amount of time spent on the administrative tasks identified above. *See Nichols*, 2019 WL 157915, at *8 (deducting 10 percent from hours to account for clerical work not specifically calculated); *see also Vega v. Chi. Park Dist.*, 12 F.4th 696, 705 (7th Cir. 2021) (explaining that district courts "may use estimates in calculating and allocating an attorney's time" because "the essential goal in shifting fees . . . is to do rough justice, not achieve auditing perfection" (quotation marks omitted)). The following chart sets forth, for each time entry at issue, the administrative tasks that necessitate a reduction, the total hours Ms. Momand billed for all tasks (both administrative and compensable), and the hours we will deduct for the administrative tasks.

| Date | Administrative Tasks | Total Hours Billed | Hours Deducted |
|------|---------------------|--------------------|----------------|
| 11/18/2020 | "[P]repare appearance forms," "edit summons," and "edit civil cover sheet" | 3.8 | 0.38 |
| 11/23/2020 | "Prepare summons for filing" and "flag deadlines in mediation program letter" | 1.1 | 0.11 |
| 11/30/2020 | "[F]lag deadline for submitting Lanham Act certificate" | 0.9 | 0.09 |
| 12/4/2020 | "[F]lag deadlines for Lanham Act mediation" | 0.8 | 0.08 |
| 12/29/2020 | "[F]lag deadline for response to complaint" | 1.2 | 0.12 |
| | **Total for 2020** | **7.8** | **0.78** |
| 1/21/2021 | "[F]lag deadlines since Defendant appeared" | 0.5 | 0.05 |
| 2/3/2021 | "Flag deadline for defendant's answer" | 0.4 | 0.04 |
| 2/17/2021 | "[F]lag deadline for filing joint statement re participation in Lanham Act mediation" | 1.2 | 0.12 |
| 2/24/2021 | "[D]raft notice of presentment" | 3.7 | 0.37 |
| 2/25/2021 | "[U]pdate draft of notice of presentment" | 5.0 | 0.50 |
| 3/8/2021 | "Draft updated notice of presentment" | 0.3 | 0.30 |

| 3/9/2021 | "Prepare notice of presentment for filing" | 0.2 | 0.20 |
|---|---|---|---|
| | **Total for 2021** | **11.3** | **1.58** |
| | **Totals for 2020 and 2021** | **19.1** | **2.36** |

***Ms. Arbaugh.*** On December 22, 2020, Ms. Arbaugh billed 0.3 hours for

"[c]orrespondence with defendant to serve additional pleadings; review confirmations of same;

[and] correspond with Mrs. Halter."[5] (Fee Invoices at 20.) Nothing indicates that it was

necessary for Ms. Arbaugh, as opposed to an assistant, to draft and send the service

correspondence to Yarbrough or confirm its receipt. To the contrary, emails sent by Ms.

Arbaugh a few days earlier to serve documents on Yarbrough do not contain anything that an

assistant could not have drafted (*see* Dkt. No. 15-2 at 6–9), and it appears that Ms. Arbaugh did

not charge Burberry for drafting or sending these emails. (*See* Fee Invoices at 19 (12/17/2020

entry: not charging for 0.5 hours out of 0.8 hours billed for tasks that included "work on several

efforts to serve defendant via RPost and address problems with the same").) We also do not see

why it was necessary for an attorney to confirm receipt of these emails. Similarly, an assistant

could have "correspond[ed] with Burberry Jesus representatives to serve and update" them

regarding "updated documents for default setting," which Ms. Arbaugh billed for along with

other tasks on March 9, 2021. (*Id.* at 41 (3/9/2021 entry: billing 0.20 hours total).) We

accordingly deduct 0.2 hours from Ms. Arbaugh's December 22, 2020 time entry for serving

documents on Yarbrough and confirming receipt, and 0.1 hours from Ms. Arbaugh's March 9,

2021 time entry for serving Yarbrough's representatives. *See Mattenson v. Baxter Healthcare*

*Corp.*, No. 02 C 3283, 2005 WL 1204616, at *3 (N.D. Ill. Feb. 11, 2005) ("[S]erving documents

. . . can be performed by clerical staff [and] should not be part of the attorney's fees."); *Newsome*

---

[5] From our review of the fee invoices, it appears that Mrs. Halter works for Burberry and was
Ms. Arbaugh's contact regarding the litigation.

*v. McCabe*, No. 96 C 7680, 2002 WL 1008472, at *3 (N.D. Ill. May 17, 2002) (disallowing hours for serving documents because that task "should have been completed by clerical staff").

**Ms. Calvo.** On March 12, 2021, Ms. Calvo spent 1.1 hours reviewing and preparing exhibits and an exhibit index for an upcoming filing and communicating with Ms. Momand regarding this work. (Fee Invoices at 42.) Ms. Calvo's time entry does not identify the filing, but we assume it refers to Ms. Arbaugh's six-paragraph "Affidavit of Service of Recent Filings" that Burberry filed three days later. (*See* Dkt. No. 32.)

The relevant inquiry for determining "the number of hours 'reasonably expended' by a paralegal . . . is 'whether the work was sufficiently complex to justify the efforts of a paralegal, as opposed to an employee at the next rung lower on the pay-scale ladder.'" *Spegon*, 175 F.3d at 553 (quoting *People Who Care*, 90 F.3d at 1315). There may be instances where reviewing and preparing exhibits requires a paralegal's expertise, but this is not one of them. The documents Ms. Calvo reviewed and prepared as exhibits for Ms. Arbaugh's affidavit—our two-paragraph order granting Burberry's *ex parte* motion for alternative service, four delivery receipts, and an exhibit index—were neither complex nor numerous. (*See* Dkt. Nos. 32-1 to 32-6.) Ms. Calvo also communicated with an attorney (Ms. Momand) about her review and preparation, which suggests that Ms. Momand, not Ms. Calvo, made any substantive decisions regarding the exhibits. In these circumstances, we conclude that Ms. Calvo's hours are not recoverable. *See, e.g., Valerio v. Total Taxi Repair & Body Shop, LLC*, 82 F. Supp. 3d 723, 744–45 (N.D. Ill. 2015) ("preparing exhibits for trial" was an administrative task that was not compensable as attorneys' fees), *as amended*, 2015 WL 3963573 (N.D. Ill. June 25, 2015); *Marcum v. Graphic Packaging Int'l, Inc.*, No. 1:13-CV-158, 2013 WL 5406236, at *5 (N.D. Ind. Sept. 25, 2013) (same for "compiling and preparing the exhibits" for a motion to compel).

To account for the administrative tasks billed by Ms. Momand, Ms. Arbaugh, and Ms. Calvo, we have deducted 0.78 hours in 2020 and 1.58 hours in 2021 for Ms. Momand, 0.2 hours in 2020 and 0.1 hours in 2021 for Ms. Arbaugh, and the entirety of Ms. Calvo's 1.1 billed hours. This results in the following calculation for hours allowed:

| Name | Requested 2020 Hours | Allowed 2020 Hours | Requested 2021 Hours | Allowed 2021 Hours | Total Hours Allowed |
|---|---|---|---|---|---|
| Marjon Momand | 122.4 | 121.62 | 50.6 | 49.02 | 170.64 |
| Natalie Arbaugh | 18.6 | 18.4 | 27.9 | 27.8 | 46.2 |
| Michael Mayer | 0.5 | 0.5 | 2.1 | 2.1 | 2.6 |
| Martha Calvo | -- | -- | 1.1 | 0.0 | 0.0 |
| David Pennel | 2.0 | 2.0 | -- | --- | 2.0 |
| | | | | For All Individuals | 221.44 |

### 3. Summary of Lodestar Calculation

By multiplying the hourly rates of Winston's personnel by the hours we have deemed reasonably expended (221.44 hours), we arrive at a lodestar of $130,296.42, as shown below.

| Name | Allowed 2020 Rate | Allowed 2020 Hours | Allowed 2021 Rate | Allowed 2021 Hours | Total |
|---|---|---|---|---|---|
| Marjon Momand | $522 | 121.62 | $519 | 49.02 | $88,927.02 |
| Natalie Arbaugh | $785 | 18.4 | $875 | 27.8 | $38,769.00 |
| Michael Mayer | $819 | 0.5 | $889 | 2.1 | $2,276.40 |
| Martha Calvo | -- | -- | $310 | 0.0 | $0.00 |
| David Pennel | $162 | 2.0 | -- | -- | $324.00 |
| | | | | Lodestar | $130,296.42 |

### B. Adjustments to the Lodestar

We next consider whether we should adjust the lodestar. "There is a strong presumption that the lodestar calculation yields a reasonable attorneys' fee award," *Pickett*, 664 F.3d at 639, and we should adjust the lodestar only "[i]n limited circumstances," *Johnson*, 668 F.3d at 929.

We see no reason to adjust the lodestar here. Burberry does not ask for an enhancement (*see generally* Mem.), and this case is not one of the "rare and exceptional" circumstances that would support enhancement. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552, 130 S. Ct.

1662, 1673 (2010) (quotation marks omitted). Nor should we decrease the lodestar, as Burberry achieved success on all the claims it asserted. *Montanez*, 755 F.3d at 556 (explaining that the lodestar may be excessive for a plaintiff that "has achieved only partial or limited success" (quotation marks omitted)). In the end, Burberry achieved excellent results, which entitles it to the full amount of the lodestar—no more, no less. *See id.*

### C.    Fees Incurred in Seeking Fees and Costs

We have identified 12.3 hours that Burberry's attorneys spent in connection with its motion requesting attorneys' fees and costs. A party may recover attorneys' fees it incurs in pursuing a request for fees and costs. *See Kurowski v. Krajewski*, 848 F.2d 767, 777 (7th Cir. 1988); *Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 992–93 (N.D. Ill. 2012). "[T]he relevant inquiry is whether the hours claimed to have been expended on the fee request bear a rational relation to the number of hours spent litigating the merits of the case." *Spegon*, 175 F.3d at 554. "If the fee petition hours are deemed disproportionate to the time spent on the merits, [we] may reduce the hours to make the award reasonable." *Garland*, 2021 WL 1676387, at *10 (citing *Spegon*, 175 F.3d at 554).

In May and June 2021, Ms. Momand billed 10.4 hours preparing the memorandum and accompanying documentation to support Burberry's request for attorneys' fees and costs, and Ms. Arbaugh billed 1.9 hours analyzing legal issues for the request, revising the supporting documentation, and conferring with Ms. Momand and Mrs. Halter regarding the request. (*See* Fee Invoices at 48, 53 (time entries for 5/26/2021, 5/27/2021, 5/31/2021, 6/1/2021, 6/2/2021, 6/3/2021, and 6/4/2021).) The number of hours Ms. Momand and Ms. Arbaugh expended for the tasks they performed is reasonable. Moreover, the total number of hours billed by Ms. Momand and Ms. Arbaugh in pursuing fees and costs (12.3 hours) bears a rational relation to the other hours reasonably billed by Winston on the merits of the case (221.44 hours). *See Spegon*, 175

13

F.3d at 554. Specifically, the hours Winston billed for requesting fees and costs amounts to roughly 5.5 percent of the hours Winston billed for the rest of the case, which is well within the range of ratios deemed reasonable by courts in the Seventh Circuit. *See, e.g.*, *Garland*, 2021 WL 1676387, at *10 (reducing hours allowed for preparing fee petition so that the resulting figure constituted approximately 8 percent of the hours reasonably spent litigating the merits); *Barnes v. Aryzta, LLC*, No. 17-cv-7358, 2019 WL 277716, at *6 (N.D. Ill. Jan. 22, 2019) (reducing hours allowed for preparing fee petition so that the resulting figure constituted 23 percent of the hours spent litigating the merits); *Gibson*, 873 F. Supp. 2d at 992–93 (reducing hours allowed for preparing fee and costs petition so that the resulting figure constituted approximately 11 percent of the hours spent litigating the merits).

As such, Burberry may recover its attorneys' fees for the 12.3 hours that its attorneys spent in connection with its motion for attorneys' fees and costs. These fees amount to $7,060.10—Ms. Momand's $519 hourly rate in 2021 x 10.4 hours ($5,397.60) plus Ms. Arbaugh's $875 hourly rate in 2021 x 1.9 hours ($1,662.50).

### D. Final Calculation Regarding Attorneys' Fees

In conclusion, we determine that the lodestar is $130,296.42 and should not be adjusted. We further find that Burberry is entitled to recover $7,060.10 for attorneys' fees incurred in connection with its motion for attorneys' fees and costs. Together, these figures result in a reasonable attorneys' fee award of $137,356.52.

## II. Burberry's Request for Costs

We now turn to Burberry's request for costs. Federal Rule of Civil Procedure 54(d) "provid[es] a strong presumption that the prevailing party will recover costs." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 945 (7th Cir. 1997); *see* Fed. R. Civ. P. 54(d)(1). This presumption, however, applies only to costs listed in 28 U.S.C. § 1920. *Winniczek v. Nagelberg*,

400 F.3d 503, 504 (7th Cir. 2005); *Sommerfield v. City of Chicago*, No. 06 C 3132, 2017 WL 3675722, at *4 (N.D. Ill. Aug. 25, 2017).

Section 1920, in turn, authorizes a party to recover the following costs:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. These are known as "taxable" costs. *See Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573, 132 S. Ct. 1997, 2006 (2012). Even if a cost is taxable, the cost must also be "reasonable and necessary to the litigation for a prevailing party to recover it." *Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 702 (7th Cir. 2008). Ultimately, we "have broad discretion in determining whether and to what extent prevailing parties may be awarded costs." *Weeks*, 126 F.3d at 945.

Burberry does not argue that any of the expenses it seeks are taxable costs under 28 U.S.C. § 1920. (Mem. at 7.) Rather, Burberry contends that it is entitled to recoup "*non*-taxable expenses incurred during this suit" under 15 U.S.C. § 1117(a) and our inherent powers. (*Id.* at 7 (emphasis added).) To the extent Burberry argues that § 1117(a) and our inherent powers authorize awarding costs that do *not* fall within the scope of § 1920, we disagree.

15

We can only award costs beyond § 1920's reach if a statute (or contract, which is not at issue here) explicitly authorizes us to do so. *Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 877–78 (2019); *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445, 107 S. Ct. 2494, 2499 (1987). And 15 U.S.C. § 1117(a) does not provide this authorization. Section 1117(a) only refers to recovering "the costs of the action," and for those federal statutes that "simply refer to 'costs[,]'"—like § 1117(a)—a federal court is "limited to awarding the costs specified" in § 1920.[6] *Rimini St.*, 139 S. Ct. at 877. Therefore, § 1117(a) does not provide a basis for Burberry to recover costs beyond those specified in 28 U.S.C. § 1920. *San Diego Comic Convention v. Dan Farr Prods.*, 807 F. App'x 674, 676–77 (9th Cir. 2020) (holding that § 1117(a)'s authorization of "costs" does not allow a party to recover litigation expenses beyond the categories of costs specified in § 1920). Nor do our inherent powers provide a basis to award Burberry its non-taxable costs. Our inherent authority is not a creature of statute, *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S. Ct. 2123, 2132 (1991), or contract. What is more, it "is a residual authority, to be exercised sparingly." *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 614 (7th Cir. 2006) (quotation marks omitted). We would not exercise that power—even if permissible—where, as here, the requesting party does not cite a single legal authority that purportedly justifies its use. (*See* Mem. at 7.) Accordingly, Burberry can only recover costs that are set forth in 28 U.S.C. § 1920.

Unfortunately, the parties have not aided our analysis. Burberry's memorandum does not even acknowledge § 1920 (*see id.*), and Yarbrough does not challenge any of Burberry's

---

[6] 28 U.S.C. § 1821 also limits the costs that a federal court can award under a statute that simply refers to costs, *Rimini Street*, 139 S. Ct. at 877, 879, but it does so by further defining the witness fee specified in § 1920(3), *see Crawford Fitting*, 482 U.S. at 440–41, 107 S. Ct. at 2497. Moreover, § 1821 does not apply here because Burberry does not seek to recover witness fees. (*See* Bill of Costs at 1.) Thus, we focus our analysis on § 1920.

requested costs as falling outside the scope of § 1920. Nonetheless, given the strong presumption that a prevailing party will recover costs, *Weeks*, 126 F.3d at 945, we will independently consider whether Burberry's requested costs are allowable under § 1920 "and, if so, whether they are both reasonable and necessary," *Cervantes v. Ardagh Grp.*, No. 16 C 11080, 2019 WL 1923395, at *2 (N.D. Ill. Apr. 30, 2019) (quotation marks omitted).

Burberry seeks to recover the following costs: $400.00 to file the Complaint in this case; $95.00 for attempting to serve process on Yarbrough; $106.85 in Federal Express expenses for serving pleadings on Yarbrough at his residence; $150.00 for Ms. Arbaugh's motion for leave to appear *pro hac vice* in this District; and $121.00 for Ms. Arbaugh's Attorney Registration and Disciplinary Commission ("ARDC") registration fee. (Dkt. No. 10; Arbaugh Decl. ¶ 14.) We address each cost in turn.

### A. Cost to File Complaint – $400.00

Burberry paid $400.00 to file the Complaint in this case. (Arbaugh Decl. ¶ 14.) This fee is recoverable as a "[f]ee[] of the clerk." 28 U.S.C. § 1920(1); *Teague v. Miehle*, No. 14 C 6950, 2019 WL 1253985, at *2 (N.D. Ill. Mar. 19, 2019). Also, because the amount of the fee is set by this District and must be paid to file a case in this District, the fee is reasonable and necessary. Thus, we award Burberry the $400.00 cost to file its Complaint.

### B. Attempts to Serve Process – $95.00

Burberry paid ATG LegalServe Inc., a private process server, $95.00 to serve Yarbrough in this case. (Arbaugh Decl. ¶ 14.) A prevailing party may recover costs for having a private process server serve a summons and complaint under § 1920(1), which authorizes "[f]ees of the . . . marshal," so long as the costs do not exceed the fees charged by the United States Marshals at the time process was served. 28 U.S.C. § 1921(a)(1)(A); *Collins v. Gorman*, 96 F.3d 1057,

17

1060 (7th Cir. 1996); *Am. Safety Cas. Ins. Co. v. City of Waukegan*, No. 07 C 1990, 2011 WL 6378817, at *3 (N.D. Ill. Dec. 20, 2011).

Here, the private process server attempted to personally serve Yarbrough with a summons and the Complaint seven times on six different days in November and December 2020. (Dkt. No. 13-3 at 2.)  At this time, the Marshals charged "$65 per hour (or portion thereof) for each item" personally served or executed, "plus travel costs and any other out-of-pocket expenses."  28 C.F.R. § 0.114(a)(3) (eff. date Oct. 30, 2013).  Although the process server was ultimately unsuccessful, the Marshals collect their fees "even when process i[s] returned to the court or the party unexecuted, as long as service is endeavored."  *Id.* § 0.114(f); *see Strategic Cap. Bancorp, Inc. v. St. Paul Mercury Ins. Co.*, No. 10-CV-2062, 2015 WL 13598262, at *2 (C.D. Ill. Dec. 7, 2015) (awarding costs under § 1920(1) for unsuccessful service attempts).  The number and timing of the service attempts also convince us that the private process server spent at least two hours attempting to serve Yarbrough.  For two hours of work, the Marshals would have charged a base fee of $130.00, which exceeds Burberry's $95.00 cost.  As such, we award Burberry $95.00 for the private process server's attempts to serve Yarbrough.

### C.    Federal Express Expenses – $106.85

Burberry seeks to recover $106.85 in Federal Express expenses incurred in delivering pleadings to Yarbrough in this case.  (Arbaugh Decl. ¶ 14.)  But postage costs such as Federal Express delivery charges are generally considered ordinary business expenses that a party cannot recover under § 1920.  *Nat'l Prod. Workers Union Ins. Tr. v. Life Ins. Co. of N. Am.*, No. 05 C 5415, 2010 WL 2900325, at *4 (N.D. Ill. July 21, 2010); *Telular Corp. v. Mentor Graphics Corp.*, No. 01 C 431, 2006 WL 1722375, at *11 (N.D. Ill. June 16, 2006).  And Burberry does not point us to any authority suggesting that we should treat its Federal Express expenses in this case any differently.  We do not award Burberry these costs.

### D. Ms. Arbaugh's *Pro Hac Vice* Fee – $150.00

Burberry paid $150.00 to have Ms. Arbaugh appear *pro hac vice* in this case. (Dkt. No. 10; Arbaugh Decl. ¶ 14.) Section 1920(1)'s "[f]ees of the clerk" is the only category of costs that could potentially authorize an award of this fee. *See* 28 U.S.C. § 1920. The Seventh Circuit has not squarely addressed whether § 1920(1) authorizes awarding *pro hac vice* fees as costs, and district courts in the Circuit are split on the issue. *See Boogaard v. Nat'l Hockey League*, No. 13 C 4846, 2017 WL 5517231, at *1–2 (N.D. Ill. Nov. 17, 2017) (citing cases); *Oleksy v. Gen. Elec. Co.*, No. 06-cv-1245, 2016 WL 7217725, at *2 (N.D. Ill. Dec. 12, 2016) (same).

Some district courts that have found *pro hac vice* fees taxable under § 1920(1) have done so because in *United States ex rel. Gear v. Emergency Medical Associates of Illinois, Inc.*, 436 F.3d 726 (7th Cir. 2006), the Seventh Circuit affirmed the district court's award of a *pro hac vice* admission fee as a cost. *See, e.g.*, *Manley v. Boat/U.S., Inc.*, No. 13-cv-5551, 2019 WL 5456990, at *2 (N.D. Ill. Oct. 24, 2019); *Boogaard*, 2017 WL 5517231, at *1–2. In *Emergency Medical Associates*, the plaintiff objected to two aspects of the district court's award of costs to the prevailing defendants: (1) "the award of $200 for admission of defendants' counsel *pro hac vice*" and (2) the amount awarded for copying documents. 436 F.3d at 727, 730. The Seventh Circuit found that the district court awarded too much for copying documents and reduced this award to $676.20. *Id.* at 730. It then affirmed the *pro hac vice* award fee but without comment or analysis: "We therefore find an abuse of discretion and reduce the award of costs to $876.20 ($676.20 for copying and $200 for attorney admission)." *Id.*

There is no indication that the Seventh Circuit in *Emergency Medical Associates* considered whether *pro hac vice* fees fall within the scope of § 1920(1). In fact, *Emergency Medical Associates* does not refer to § 1920 at all. Nonetheless, the court in *Boogaard* viewed *Emergency Medical Associates* as binding precedent that expressly authorized the recovery of

19

*pro hac vice* fees under § 1920(1).  *Boogaard*, 2017 WL 5517231, at *1; *see also Manley*, 2019

WL 5456990, at *2 ("The Seventh Circuit has approved of taxing pro hac vice appearance fees

as fees of the clerk[.]") (referring to *Emergency Medical Associates*).  Other courts have

similarly interpreted *Emergency Medical Associates* as showing that the Seventh Circuit allows

*pro hac vice* fees to be awarded as costs.  *See, e.g.*, *Kalitta Air L.L.C. v. Central Tex. Airborne

Sys. Inc.*, 741 F.3d 955, 958 (9th Cir. 2013); *Lockwood v. CIS Servs., LLC*, No. 3:16-cv-965-J-

39PDB, 2019 WL 2226126, at *19–20 (M.D. Fla. May 3, 2019).

 In light of *Emergency Medical Associates*, we conclude that the prudent course is to

award *pro hac vice* fees as costs under § 1920(1) unless and until the Seventh Circuit or the

Supreme Court holds that such fees are not recoverable as fees of the clerk.  Moreover, we find

nothing unreasonable about Burberry seeking to recover one *pro hac vice* fee.  Accordingly, we

award Burberry $150.00 for Ms. Arbaugh's *pro hac vice* admission.

### E. Ms. Arbaugh's ARDC Registration Fee – $121.00

 Burberry lastly seeks to recover $121.00 it spent in April 2021 for Ms. Arbaugh's ARDC

registration fee.  (Arbaugh Decl. ¶ 14.)  This fee appears to be the annual registration fee that an

attorney would pay in 2021 to be an "active status" attorney in Illinois if she was first admitted to

the bar in 2018 or 2019.  *See* ARDC of the Supreme Court of Illinois, 2021 Fee Schedule,

https://registration.iardc.org/attyreg/Registration/regdept/2021_Fee_Schedule.aspx?WebsiteKey

=73404d40-a36b-4362-8983-68937805a9bb (last visited Nov. 16, 2021).  But it is unclear why

Ms. Arbaugh would pay such a fee.  According to her biography on Winston's website, she was

admitted to the bar well before 2018 and is not admitted to practice in Illinois.  *See* Natalie

Arbaugh – Litigation Attorney – Winston & Strawn, https://www.winston.com/en/who-we-

are/professionals/arbaugh-natalie-l.html#full-bio (last visited Nov. 16, 2021).  Regardless, an

annual ARDC registration fee in no way constitutes a "filing" fee (as Burberry characterizes it) or any other expense set forth in 28 U.S.C. § 1920. Burberry cannot recover this cost.

*     *     *

In sum, we award Burberry costs in the total amount of $645.00: $400.00 for its filing fee, $95.00 for its process server's attempts to serve Yarbrough, and $150.00 for Ms. Arbaugh's *pro hac vice* fee. We do not award Burberry any of its other requested costs.

### III. Opportunity to Respond

Because we have disallowed certain fees and costs sought by Burberry even though Yarbrough did not object to these fees and costs, we will give Burberry an opportunity to respond to our ruling. When a district court "raises concerns about the fee petition that are based upon its independent scrutiny of the record or when the court establishes reasons sua sponte for reducing the fee award," it must give the petitioner an opportunity to respond. *Pickett*, 664 F.3d at 652; *Spellan*, 59 F.3d at 646 (explaining that if the district court's independent investigation leads it "to question certain aspects of the [fee] petition that have not been questioned previously by the opposing party, the party submitting the petition ought to have the opportunity to address the concerns of the district court before a final ruling is made on the matter"). We therefore give Burberry 21 days after entry of this Opinion to file a brief addressing the fees and costs that we have disallowed. If Burberry does so (and it is not required to do so), we will issue a final ruling on Burberry's request for fees and costs after taking Burberry's brief under advisement. If Burberry does not file a brief within 21 days or notifies us that it will not be filing a brief, we will confirm the ruling set forth in this Opinion.

### IV. Request for Prejudgment and Post-Judgment Interest

Finally, Burberry requests in its memorandum's conclusion that we enter an order awarding prejudgment and post-judgment interest on the award of attorneys' fees and costs.

(Mem. at 7.)  Because "a prevailing plaintiff in federal court is automatically entitled to postjudgment interest" under 28 U.S.C. § 1961(a), we do not need to address this aspect of Burberry's request in this Opinion.  *Miller v. Artistic Cleaners*, 153 F.3d 781, 785 (7th Cir. 1998) ("It is simply unnecessary for the court to refer to statutorily provided interest.  Thus, the district court did not err in making no mention of postjudgment interest in its order awarding attorney's fees.").  But whether to award prejudgment interest on an award of attorneys' fees and costs and how to calculate such interest are generally matters of discretion.  *Frey v. Coleman*, 903 F.3d 671, 682 (7th Cir. 2018); *Pickett v. Sheridan Health Care Ctr.*, 813 F.3d 640, 646–47 (7th Cir. 2016).  So this aspect of Burberry's request requires some consideration.

Burberry requests "prejudgment interest at the prime rate, compounded monthly."  (Mem. at 7.)  To resolve this request, we would have to answer the following questions in succession: (1) Is an award of prejudgment interest appropriate in this case? (2) If appropriate, should we use the prime rate? (3) If so, should the prime rate be compounded? and (4) If so, should the prime rate be compounded monthly?  Even if we answered "yes" to each question, we would then have to calculate the prejudgment interest that should be awarded.

As was the case with its request for costs, though, Burberry does not support its request for prejudgment interest with any legal citations or developed argument.  (*See id.*)  Burberry does not explain why it is appropriate to award prejudgment interest, why it is appropriate to use the prime rate (as opposed to another interest rate), why the interest rate should be compounded (as opposed to simple), or why the interest rate should be compounded monthly (as opposed to annually).  Nor does Burberry provide a calculation of prejudgment interest for us to consider. "It is not the court's responsibility to research the law and construct the parties' arguments for them." *Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir.

2008). Consequently, we do not need to consider arguments that are perfunctory and undeveloped or unsupported by legal authority. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017). Although we overlooked Burberry's lack of argument regarding costs, we are not inclined to do so again for its request for prejudgment interest. *See Kmart Corp. v. Footstar, Inc.*, 777 F.3d 923, 933–34 (7th Cir. 2015) (finding that the plaintiff waived its prejudgment interest argument where, among other things, the plaintiff "did not cite a single case supporting its position that it [was] entitled to prejudgment interest" in its district court briefing). Thus, we decline to award Burberry prejudgment interest.

## CONCLUSION

For the foregoing reasons, we grant Burberry's motion for fees and costs (Dkt. No. 39) in part. We award Burberry $137,356.52 in attorneys' fees and $645.00 in costs, subject to Burberry's decision on whether to address the attorneys' fees and costs that we have disallowed. If Burberry wishes to address these fees and costs, it has 21 days after entry of this Opinion to do so. If not, we will confirm the above award of attorneys' fees and costs. It is so ordered.

Honorable Marvin E. Aspen
United States District Judge

Dated: November 17, 2021

23